UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE                                             : | CHAPTER 7 |
| COLLEEN HOLLOWAY                        : | |
| DEBTOR_____  : | CASE NO.05-40128-JBR |
| COLLEEN HOLLOWAY,                    : | |
| PLAINTIFF,                                      : | |
| v.                                                    : | AP. NO. 05-4170 |
| BASS & ASSOCIATES, P.C. and     : | |
| HOUSEHOLD BANK, N.A.,              : | |
| DEFENDANTS.                              : | |

**MEMORANDUM OF DECISION REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR FURTHER ORDERS AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court for hearing on the Plaintiff's Motion for Partial Summary Judgment and for Further Orders [docket # 27] and the Defendants' Cross Motion for Summary Judgment [docket #32]. Plaintiff seeks summary judgment on the issue of the Defendants' liability and further seeks orders enjoining the Defendants from "further unlawful activities" and compelling disclosure of facts necessary to a determination of whether class certification is appropriate. For the reasons stated herein, the Plaintiff's Motion is DENIED and the Defendants' Motion is GRANTED except with respect to the Defendants' request for sanctions under Fed. R. Bankr. P. 9011.

FACTS

All of the material facts, except one, are undisputed. The one disputed fact,

namely whether or not Household Bank had a secured claim, can be easily resolved by the Court as the grant of a purchase money security interest is set forth in the underlying credit card agreement which is an exhibit to the Defendants' Cross Motion for Summary Judgment. The Debtor does not dispute the authenticity of the credit card agreement. The Debtor's denial of the existence of a purchase money security interest arises from her reliance on an endorsement order entered after the date of the actions about which the Debtor complains and which the Debtor would have the Court read far more broadly than the endorsement order provides.

In August, 2000 the Debtor applied for and received a credit card from Defendant Household Bank to purchase furniture from Jordan's Furniture. Paragraph 16 of the Cardholder Agreement and Disclosure Statement grants Household Bank a purchase money security interest in items purchased using the Household Bank credit card, with certain exceptions not relevant to this case. In April 2003 the Debtor purchased furniture from Jordan's Furniture and charged $7,488.30 to her Household Bank credit card. Approximately one month later the Debtor purchased additional household furniture and charged $974.00 to her Household Bank credit card. The Debtor failed to make the monthly credit card payments and as a result interest, previously deferred, was added to the amount owed.

On January 6, 2005 (the "Petition Date") the Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code. As of the Petition Date the Debtor owed Household Bank approximately $12,000. She scheduled her debt to Household Bank as unsecured. Household Bank retained Bass & Associates ("Bass") to represent it in this bankruptcy and on May 2, 2005 Bass sent a letter to Debtor's

2

counsel which states in part as follows: "Please be advised that our client holds a purchase money security interest in the consumer goods in regards to the above referenced claim." The letter requests that Bass be advised as to the statement of intent and list the three options that a consumer debtor may select under § 521(2)(A) of the Code.[1] A copy of a reaffirmation agreement was included with the letter. The proposed reaffirmation agreement lists the collateral as "furniture" and its value as $11,652.08, the amount of the outstanding debt on the Petition Date. The basis or source of the valuation is notes as "auction, FMV, blue book." The proposed reaffirmation agreement contains the clear and conspicuous disclosures previously required by § 524(c) and those disclosures are not in issue.

On May 5, 2005 the Debtor's counsel sent Bass a letter which provides in relevant part as follows:

> There is nothing in any of the documents forwarded to me that confirm any of the
>
> (1) The existence of a valid and perfected security interest in _anything_; or
>
> (2) Confirmation of the value of the "consumer goods" claimed to have been purchased.
>
> Increasingly, creditors are claiming the existence of security interests without the [sic] providing any supporting documentation. When confronted with the lack of documentation, creditors typically "abandon" or "withdraw" the claim. Please be advised that I take a much more aggressive posture and take these actions very seriously.

---

[1] Section 521(2)(A) has been renumbered as § 521(a)(2)(A) under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. 109-8, 119 Stat. 37 ("BAPCPA"). BAPCPA is not applicable to this case.

3

The letter demands documentation of the security interest and value of the goods within 30 days and threatens future legal action if the documents are not timely received. Bass did not respond to the May 5, 2005 letter within 30 days and the Debtor's counsel filed a "Motion to Determine Secured Status of Claim Pursuant to 11 U.S.C. § 506(d) and for Further Others [sic]" [docket 69 in Chapter 7 case no. 05-40128] (the "Section 506(d) Motion"). In the motion the Debtor averred that "[u]pon information and belief, such debt is strictly a revolving charge account without retaining any security interest in any item purchased or obtained." The motion requested a finding that the claim of Jordan's Furniture and/or Household Bank be deemed unsecured. Household did not file a response and the motion was allowed.[2] Subsequently the Debtor commenced the instant adversary proceeding alleging violations of 15 U.S.C. § 1692e(2)(A) (the "Fair Debt Collection Practices Act") and M.G.L. c. 93A by Bass and alleging a violation of the automatic stay by Bass and Household Bank. The complaint seeks damages and, in the event that Bass and Household Bank are found liable, a determination of whether a class should be certified. The Defendants deny that they have committed any unlawful acts.

POSITION OF THE PARTIES

The Debtor argues she is entitled to summary judgment because her Section 506(d) Motion was allowed and thus Household Bank holds only an unsecured claim.[3]

---

[2]Although the Defendants argue that the Debtor failed to seek the determination of the unsecured status of the claim via an adversary proceeding, they did not object to the motion on procedural grounds when it was filed.

[3]Although the Debtor also complains that the Defendants did not attach any evidence to support the valuation included in the proposed reaffirmation agreement,

4

As an unsecured creditor Household Bank had no right to seek a reaffirmation agreement in which it claims a security interest and seeks one of the three options, namely reaffirmation, redemption, or return of the collateral, available only for secured claims.  Therefore she alleges that Bass' conduct of sending the May 2, 2005 letter and reaffirmation agreement violated the Fair Debt Collection Act, was an unfair act under Massachusetts law,  and was an attempt to collect a prepetition debt in violation of the automatic stay.  Moreover, as noted in the Debtor's counsel's first written communication to Bass, the Debtor's attorney "suspects" that there are unsecured creditors, apparently including Household Bank and its counsel, preying upon debtors by attempting to obtain unwarranted reaffirmation agreements.

The Defendants deny that they have engaged in any wrongdoing.  Bass maintains that  it was in possession of the credit card agreement when it sent May 2, 2005 letter but that because the actual delivery invoices were not in its possession it did not respond to the Debtor's attorney's letter of May 5, 2005 or the Section 506(d) Motion.  It has produced the credit card agreement and the Debtor does not dispute its authenticity.  The Defendants characterize Bass' May 2 letter as "benign" and thus not violative of the automatic stay.  Further they state that the May 2 letter, even if it falsely characterized the Household Bank claim as secured, cannot be a communication that violates as the Fair Debt Collection Act because it was not sent to the Debtor, but only to her counsel.

---

she also did not present any evidence of the valuation and the Court therefore makes no valuation finding.

DISCUSSION

Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056, provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

In the instant case, there are no disputed facts. The Debtor disputes that Household Bank ever held a secured claim but her denial of the security interest rests upon her misreading of the endorsement order granting her Section 506(d) Motion. She goes too far in her assertion that "[t]he Court determined that no security interest *ever* existed by granting Plaintiff's Motion to Determine Secured Status." Plaintiff's Response to the Defendants' Rule 56.1 Statement at ¶ 2. The endorsement order did not determine that no security interest *ever* existed; it simply allowed the motion deeming that Household Bank's claim was unsecured because no objection was filed. Indeed as the credit card agreement shows, Household received a purchase money security interest in the furniture purchased by the Debtor. It is a question of law as to whether the subsequent granting of the Section 506(d) Motion can be the basis for finding the Defendants' actions unlawful. The Court finds that it cannot. At the time Bass sent the May 2 letter and reaffirmation agreement it, the Court had not determined that Household Bank's claim was unsecured and in light of the language of the credit card agreement, it is clear that it was secured by a purchase money security interest.[4]

---

[4] Although the misstatement of valuation in a reaffirmation agreement may be sanctionable, the debtor did not seek sanctions on this basis and, as noted previously, the Debtor failed to produce any evidence to support her claim that the value placed on the collateral in the proposed reaffirmation agreement was false. Moreover, for the reasons set forth herein, the May 2 letter and the proposed reaffirmation agreement are not communications within the meaning of the FDCPA nor did the Defendants violate

6

That Bass did not attach a copy of the credit card agreement did not make its claim unsecured or false. *Kropelnicki v. Siegal*, 290 F.3d 118, 125 (2d Cir. 2002). Moreover it is well settled that a creditor may inquire about a debtor's intent with respect to a secured debt without running afoul of the automatic stay, especially when the communication was made to a debtor's counsel as it was in this case. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 424 (6th Cir. 2000), In re *Duke*, 79 F.3d 43 (7th Cir. 1996); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 82 (3d Cir.1988)(credit union letter asserting union's policy to deny services to members with outstanding debts unless reaffirmed held not violative of stay); *In re Jefferson*, 144 B.R. 620, 623 (Bankr.D.R.I.1992) (letter sent considered informational and not threatening). As in *Jefferson*, the language contained in Bass' May 2 letter "is neither threatening, coercive nor offensive.... It simply informs the Debtor that an offer to reaffirm is being extended by the creditor, and on what terms." *Id.* at 624.

The Debtor relies on *In re Walker*, 194 B.R. 165 (Bankr. E.D. Tenn. 1996), a case easily distinguished from the instant case. In *Walker* the creditor's attorney sent a letter and reaffirmation agreement directly to the debtor, and imposed an arbitrary deadline of 15 days for the debtor's response. The reaffirmation agreement also lacked the required disclosures and notably, omitted any line for a debtor's attorney's signature, thus underplaying, if not omitting, the important role such attorney plays in the reaffirmation process. None of these facts are present in the instant case. Indeed the communication was only between Bass and counsel for the Debtor.

---

M.G.L. c. 93A.

7

That the communication was only between Bass and the attorney for the Debtor not only warrants a finding that the automatic stay was not violated, it creates the basis for denying judgment to the Debtor on her Fair Debt Collection Practices Act claim. Even if the Bass letter and reaffirmation agreement had falsely stated that Household Bank's claim was secured, the letter is not a communication under the FDCPA. *Kropelnicki*, 290 F.3d 128.

Finally as neither Defendant violated the automatic stay or the FDCPA, the Debtor's claim that they violated M.G.L.c. 93A must fail as it is predicated on finding a violation of either the automatic stay or the FDCPA.

The Defendants have requested sanctions pursuant to Fed. R. Bankr. P. 9011. They have not presented evidence upon which the Court can find that they gave the Debtor's attorney an opportunity to comply with the safe harbor provisions of that rule. "Under the safe harbor provision, a party seeking sanctions must serve its motion on the opposing party and may file the motion with the court 21 days later only if the challenged pleading is neither withdrawn nor corrected within that time." *In re M.A.S. Realty Corp.*, 326 B.R. 31, 38 (Bankr. D. Mass. 2005). Consequently the request for sanctions must be denied.

For the reasons set forth herein, the Plaintiff's Motion is DENIED and the Defendants' Motion is GRANTED, except to the extent it seeks sanctions pursuant ot Fed. R. Bankr. P. 9011.

Separate orders will issue.

Dated: January 20, 2006

*[signature]*
Joel B. Rosenthal
United States Bankruptcy Judge

8